UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**23-20364-CR-RUIZ/BECERRA**

Case No. _____

18 U.S.C. § 371
15 U.S.C. § 78dd-3
18 U.S.C. § 981(a)(1)(C)

FILED BY ___MP___ D.C.

Sep 11, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami, FL

UNITED STATES OF AMERICA

vs.

ORLANDO ALFONSO CONTRERAS SAAB,

Defendant.
_____/

## INFORMATION

The United States of America charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

#### Relevant Statutory Background

1.  The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of influencing the foreign official, inducing the foreign official to take or omit certain acts, and securing an improper advantage in order to assist those classes of persons in obtaining or retaining business for, or directing business to, any person.

#### Relevant Entities and Individuals

2.  Comité Local de Abastecimiento y Producción ("CLAP") was a Venezuelan state-owned and state-controlled food and medicine distribution program for the people of Venezuela.

3. Comercializadora de Bienes Y Servicios Del Estado Tachira ("COBISERTA") was a company that was owned and controlled by the Venezuelan State of Tachira and that, among other things, purchased food for the people of Tachira. COBISERTA was a "department," "agency," and "instrumentality" of a foreign government, and COBISERTA's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

4. Coporación Venezolana de Comercio Exterior ("CORPOVEX") was a state-owned and state-controlled entity in Venezuela that managed all import and export activities of Venezuela. CORPOVEX was a "department," "agency," and "instrumentality" of a foreign government, and CORPOVEX's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

5. Ministerio del Poder Popular de Economía y Finanzas ("Ministry of Finance") was the government ministry in Venezuela that oversaw the finances of Venezuela. The Ministry of Finance was a "department," "agency," and "instrumentality" of a foreign government, and the Ministry of Finance's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

6. Fondo de Desarollo Nacional ("FONDEN") was the state-owned and state-controlled government entity in Venezuela that invested government funds in the best interests of the people of Venezuela. FONDEN was a "department," "agency," and "instrumentality" of a foreign government, and FONDEN's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

7. Banco de Desarrollo Económico y Social de Venezuela ("BANDES") was the state-owned and state-controlled government entity in Venezuela that was designed to promote

economic development and sustained growth in Venezuela. BANDES was a "department," "agency," and "instrumentality" of a foreign government, and BANDES's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

8.     COBISERTA and CORPOVEX contracted with companies under the CLAP program to purchase and import food into Venezuela and were also responsible for overseeing the execution of those contracts. CORPOVEX also contracted with companies to purchase and import medicine into Venezuela and was responsible for overseeing the execution of those contracts.

9.     Defendant **ORLANDO ALFONSO CONTRERAS SAAB** was a citizen of Venezuela. **ORLANDO ALFONSO CONTRERAS SAAB** was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(a).

10.    Alvaro Pulido Vargas, a/k/a German Enrique Rubio Salas, a/k/a "Cuchi," ("Pulido") was a citizen of Colombia. Pulido, together with Co-Conspirator 1 (defined below), controlled several companies that obtained contracts from COBISERTA and CORPOVEX to provide food and medicine to Venezuela, including Group Grand Limited and Asasi Food.

11.    Co-Conspirator 1 was a citizen of Colombia. Co-Conspirator 1, together with Pulido, controlled several companies that obtained contracts from COBISERTA and CORPOVEX to provide food and medicine to Venezuela, including Group Grand Limited and Asasi Food. Co-Conspirator 1 conspired with Pulido and others to execute the scheme related to contracts obtained from the Venezuelan government.

12.    Jose Gregorio Vielma-Mora ("Vielma-Mora") was a citizen of Venezuela. From in or around 2012 through in or around 2017, Vielma-Mora was the Governor of the Venezuelan State of Tachira. As Governor, Vielma-Mora oversaw COBISERTA and its contracting process.

Vielma-Mora was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

13. Emmanuel Enrique Rubio Gonzalez ("Rubio") was a citizen of Colombia and the son of Pulido. Rubio conspired with Pulido and others to execute the scheme related to contracts obtained from the Venezuelan government.

14. Carlos Rolando Lizcano Manrique ("Lizcano"), was a citizen of Colombia. Lizcano conspired with Pulido, Co-Conspirator 1, Rubio, and others to execute the scheme related to contracts obtained from the Venezuelan government.

15. Ana Guillermo Luis ("Guillermo") was a citizen of Venezuela and Spain. Guillermo conspired with Pulido, Co-Conspirator 1, Rubio, Lizcano, and others to execute the scheme related to contracts obtained from the Venezuelan government.

16. Venezuelan Government Official 1 was a citizen of Venezuela. From in or around October 2014, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official at FONDEN. From in or around October 2017, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official for the Venezuelan Ministry of Finance. From in or around January 2014, through in or around September 2020, Venezuelan Government Official 1 was a high-ranking official of BANDES. Venezuelan Government Official 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-3(f)(2)(A).

17. Venezuelan Government Official 2 was a citizen of Venezuela. Beginning in or around at least July 2016, Venezuelan Government Official 2 was a public official in the Venezuelan Ministry of Finance. From in or around December 2017, through in or around March 2020, Venezuelan Government Official 2 was a high-ranking official in the Venezuelan Ministry

of Finance. Beginning in or around February 2017, Venezuelan Government Official 2 was a high-ranking official of BANDES. Beginning in or around June 2018, Venezuelan Government Official 2 was a high ranking official of CORPOVEX. Venezuelan Government Official 2 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(2)(A).

## CONSPIRACY TO VIOLATE THE FOREIGN CORRUPT PRACTICES ACT
## (18 U.S.C. § 371)

1. Paragraphs 1 through 17 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around early to mid-2016, and continuing through in or around at least September 2019, in the Southern District of Florida, and elsewhere, the defendant,

**ORLANDO ALFONSO CONTRERAS SAAB,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the United States, including Alvaro Pulido Vargas, Emmanuel Enrique Rubio Gonzalez, Carlos Rolando Lizcano Manrique, Ana Guillermo Luis, and Co-Conspirator 1 to commit offenses against the United States, namely: while in the territory of the United States, to willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce and do an act in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, (iii) securing any improper advantage, and

(iv) inducing such foreign official to use his influence with a foreign government and instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist the defendant and others in obtaining and retaining business for and with, and directing business to, Pulido, Co-Conspirator 1, the defendant and others, in violation of Title 15, United States Code, Section 78dd-3.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by engaging in a scheme to bribe Venezuelan officials to obtain and retain contracts and other business advantages, including obtaining multi-million-dollar contracts with entities and instrumentalities owned and controlled by the Venezuelan government for the production, importation, and distribution of food and medicine to the people of Venezuela.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **ORLANDO ALFONSO CONTRERAS SAAB**, and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4. As part of the conspiracy, Pulido, Co-Conspirator 1, Lizcano, Rubio, Guillermo, **ORLANDO ALFONSO CONTRERAS SAAB** and others obtained contracts related to the production, importation, and distribution of food to the Venezuelan government.

5. As the Governor of the Venezuelan State of Tachira, Jose Gregorio Vielma-Mora oversaw the contracting process related to the importation of food into Venezuela for distribution to the people in the State of Tachira as part of the CLAP program.

6. **ORLANDO ALFONSO CONTRERAS SAAB** agreed with others, including Pulido, Co-Conspirator 1, Rubio, Lizcano, and Guillermo, to pay bribes for the benefit of

Venezuelan government officials, including Vielma-Mora, Venezuelan Government Official 1, and Venezuelan Government Official 2, in exchange for their assistance in obtaining contracts to provide food to the people of Venezuela through COBISERETA and CORPOVEX.

7. On or about October 14, 2016, Group Grand Limited—a company owned and controlled by Pulido and Co-Conspirator 1—obtained a contract from COBISERTA to import and distribute approximately 10 million boxes of food under the CLAP program at $34 per box for a total contract amount of approximately $340,000,000. Although the co-conspirators knew that the actual cost of producing, importing and distributing the food boxes was far less than $34 per box, they agreed to make COBISERTA pay an inflated price so that the co-conspirators could use the additional funds to pay bribes to Vielma-Mora and other Venezuelan government officials and to obtain millions of dollars of corrupt proceeds from the scheme.

8. In or around mid to late 2016, **ORLANDO ALFONSO CONTRERAS SAAB** met with Vielma-Mora and Co-Conspirator 1 and discussed how Vielma-Mora would receive the bribes owed to him for his part in awarding the food contracts to companies controlled by, and for the benefit of, Pulido, Co-Conspirator 1 and the other co-conspirators. During the meeting, the co-conspirators determined that **CONTRERAS SAAB** would serve as an intermediary to receive the bribe money on behalf of Vielma-Mora. **CONTRERAS SAAB** forwarded, paid, transferred, and directed those bribes as instructed by Vielma-Mora. **CONTRERAS SAAB** also received payments for his part in the illegal bribery scheme.

9. **ORLANDO ALFONSO CONTRERAS SAAB**, while in the United States, did authorize the payment of and pay bribes, directly and indirectly, to and for the benefit of Vielma-Mora in exchange for Vielma-Mora's assistance in awarding contracts and providing business advantages to companies owned and controlled by the co-conspirators.

10. **ORLANDO ALFONSO CONTRERAS SAAB** and his co-conspirators also agreed to promote the illegal bribery scheme and to conceal the nature, source, ownership, and control of the bribes paid, and did conceal and cause to be paid bribes to Vielma-Mora and others, by directing those payments be made to bank accounts in foreign countries and the United States and through the United States, including in the Southern District of Florida.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purpose and objects thereof, **ORLANDO ALFONSO CONTRERAS SAAB** and his co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. In or around early to mid-2016, **ORLANDO ALFONSO CONTRERAS SAAB** met with Vielma-Mora and Co-Conspirator 1 and discussed Vielma-Mora's role in the importation of food to the State of Tachira in Venezuela.

2. In or around early to mid-2016, **ORLANDO ALFONSO CONTRERAS SAAB** met with Vielma-Mora, Lizcano, and Co-Conspirator 1 and discussed a proposal for the production, importation, and distribution of boxes of food to the people of Venezuela through the CLAP program.

3. In or around early to mid-2016, Vielma-Mora directed **ORLANDO ALFONSO CONTRERAS SAAB** to create a proposal for the boxes of food.

4. In or around early to mid-2016, Co-Conspirator 1 directed Lizcano to work with **ORLANDO ALFONSO CONTRERAS SAAB** to create the proposal for the boxes of food for importation into Venezuela.

5. In or around early to mid-2016, **ORLANDO ALFONSO CONTRERAS SAAB** and Lizcano presented the proposal for the food box to their co-conspirators at a meeting in Venezuela. During the meeting, the co-conspirators discussed the actual cost for the production of the food boxes.

6. In or around mid to late 2016, **ORLANDO ALFONSO CONTRERAS SAAB**, Co-Conspirator 1, Lizcano, and Vielma-Mora, met with Venezuelan Government Officials 1 and 2 in order to obtain the support and approval of Venezuelan Government Officials 1 and 2 for awarding the food contracts to companies controlled by Pulido and Co-Conspirator 1.

7. During a meeting in or around mid to late 2016, **ORLANDO ALFONSO CONTRERAS SAAB** agreed with Vielma-Mora and Co-Conspirator 1 that **CONTRERAS SAAB** would receive the bribe money owed to Vielma-Mora for his part in awarding the food contracts to companies controlled by, and for the benefit of, Pulido, Co-Conspirator 1 and the other co-conspirators and then transfer those bribes as directed by Vielma-Mora.

8. On or about December 12, 2016, co-conspirators caused a wire transfer of approximately $1,999,910.00 USD to be sent to a bank account outside the United States held in the name of a company controlled by **ORLANDO ALFONSO CONTRERAS SAAB**, which payment was for the benefit of **CONTRERAS SAAB** and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

9. On or about December 23, 2016, **ORLANDO ALFONSO CONTRERAS SAAB** caused a wire transfer of approximately $1,599,965.00 USD from the bank account referenced in paragraph 18 to a bank account maintained by **CONTRERAS SAAB** in the Southern District of Florida, a portion of which funds were transferred and used for the benefit of Vielma-Mora in order

to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

10. On or about January 26, 2017, co-conspirators caused a wire transfer of approximately $1,999,910.00 USD to be sent to a bank account outside the United States held in the name of a company controlled by **ORLANDO ALFONSO CONTRERAS SAAB** which payment was for the benefit of **CONTRERAS SAAB** and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

11. On or about February 11, 2017, while in the United States, **ORLANDO ALFONSO CONTRERAS SAAB** caused a wire transfer of approximately $1,599,965.00 USD from a bank account outside the United States held in the name of a company controlled by **CONTRERAS SAAB** to a bank account maintained by **CONTRERAS SAAB** in the Southern District of Florida. Specifically, in connection with this wire transfer, **CONTRERAS SAAB**, while in the United States, sent an email to a financial institution located in Panama, attaching documentation to support the financial transfer. A portion of these funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

12. On or about June 14, 2017, co-conspirators caused a wire transfer of approximately $4,000,000 USD to be sent to another bank account outside the United States held in the name of a company controlled by **ORLANDO ALFONSO CONTRERAS SAAB**, which payment was for the benefit of **CONTRERAS SAAB** and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

13. On or about July 5, 2017, **ORLANDO ALFONSO CONTRERAS SAAB** caused a wire transfer of approximately $2,525,000 USD from a bank account maintained by

**CONTRERAS SAAB** outside the United States to a bank account controlled by **CONTRERAS SAAB** in the Southern District of Florida, a portion of which funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

14. On or about July 17, 2017, co-conspirators caused a wire transfer of approximately $756,935 USD to be sent to the same bank account outside the United States held in the name of a company controlled by **ORLANDO ALFONSO CONTRERAS SAAB**, which payment was for the benefit of **CONTRERAS SAAB** and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

15. On or about August 23, 2017, **ORLANDO ALFONSO CONTRERAS SAAB** caused a wire transfer of approximately $630,228 USD from a bank account that he controlled outside of the United States to his bank account in the Southern District of Florida, a portion of which funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

16. On or about March 6, 2019, **ORLANDO ALFONSO CONTRERAS SAAB**, while in the United States, authorized the transfer of funds at the direction of and for the benefit of Vielma-Mora from a bank account that **CONTRERAS SAAB** controlled to individuals and entities that Vielma-Mora specified, all in furtherance of and to promote the bribery scheme.

17. On or about April 5, 2019, **ORLANDO ALFONSO CONTRERAS SAAB**, while in the United States, authorized a credit card transaction using his credit card in order to pay

approximately $4,499 to a travel website for a close relative of Vielma-Mora, at the direction of and for the benefit of Vielma Mora, all in furtherance of and to promote the bribery scheme.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**
**(18 U.S.C. § 981(a)(1)(C))**

1. The allegations contained in this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ORLANDO ALFONSO CONTRERAS SAAB**, has an interest.

2. Upon conviction of a conspiracy to commit a violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-3, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

MICHAEL DAVIS
ATTORNEY FOR THE UNITED STATES,
UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515.

GLENN S. LEON
CHIEF, FRAUD SECTION   ACTING
CRIMINAL DIVISION

Kurt K. Lunkenheimer
Assistant United States Attorney

Alexander J. Kramer
Trial Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

Orlando Alfonso Contreras Saab,

_____/
           Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☒ Miami    ☐ Key West    ☐ FTP
☐ FTL       ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)
   I    ☒ 0 to 5 days                       ☐ Petty
   II   ☐ 6 to 10 days                      ☐ Minor
   III  ☐ 11 to 20 days                     ☐ Misdemeanor
   IV   ☐ 21 to 60 days                     ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Scola/Martinez    Case No. 19-cr-20450-RNS/21-cr-20509-JEM
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Kurt K. Lunkenheimer
Assistant United States Attorney
Court ID No. A5501535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ORLANDO ALFONSO CONTRERAS SAAB

**Case No:** _____

Count #: 1

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine:  $250,000.00 / $100.00 Special Assessment**

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
|  | ) |
| Orlando Alfonso Contreras Saab, | ) |
| *Defendant* | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorneys*

SAMUEL J. RABIN, JR., Esq. and ANDREA LOPEZ, Esq.
*Printed name of defendant's attorneys*

_____
*Judge's signature*

_____
*Judge's printed name and title*