**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.** 23-20364-CR-RUIZ

**UNITED STATES OF AMERICA**

**vs.**

**ORLANDO ALFONSO CONTRERAS SAAB,**

**Defendant.**

______________________________/

**FACTUAL PROFFER**

The United States and ORLANDO ALFONSO CONTRERAS SAAB (the "defendant") stipulate and agree that the information herein is true and accurate, and a sufficient basis for the defendant's plea of guilty, and if this case had proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, which prove that the defendant is guilty of the charge in the Information, Conspiracy to Commit an Offense against the United States, in violation of Title 18, United States Code, Section 371.

In addition, effective as of the date the defendant signs this Factual Proffer, and notwithstanding any other subsequent event, including but not limited to the defendant's failure to plead guilty, the court's refusal to accept the defendant's guilty plea, or the defendant's withdrawal (or attempted withdrawal) of his guilty plea, the defendant agrees and understands that: (a) the defendant hereby waives any protection afforded by any proffer letter agreement between the parties; (b) the defendant will not assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Factual Proffer should be suppressed or is otherwise

inadmissible as evidence (in any form); and (c) the defendant has adopted the entire Factual Proffer as the defendant's statements, and the defendant has stipulated to the admissibility of the Factual Proffer in any case brought by the Offices as substantive evidence offered by the government in its case-in-chief and rebuttal case; impeachment evidence offered by the government on cross-examination; and evidence at any sentencing hearing or other hearing.

1. Between in or around early to mid-2016 and continuing through in or around September 2019, the defendant participated in a conspiracy to pay bribes to Venezuelan government officials, including Jose Gregorio Vielma-Mora ("Vielma-Mora"), the Governor of the State of Tachira in Venezuela, in exchange for contracts and business advantages that were directed to members of the conspiracy. In furtherance of the scheme, the defendant served as an intermediary who received bribe payments on behalf of Vielma-Mora and directed the funds as instructed by, and for the benefit of, Vielma-Mora and other conspirators, among other things.

2. The defendant was brought into the conspiracy by Vielma-Mora in or around early to mid-2016. Around the same time, Co-Conspirator 1 and Alvaro Pulido Vargas ("Pulido"), created and implemented schemes to unlawfully enrich themselves and others by making bribe payments to Venezuelan officials to obtain and retain contracts and other business advantages, including obtaining multi-million dollar contracts with the Venezuelan government, and departments, agencies, and instrumentalities owned and controlled by the Venezuelan government for the production, importation, and distribution of food to the people of Venezuela.

3. In or about 2016, Co-Conspirator 1, Pulido, and other co-conspirators were awarded a contract by the Government of Venezuela to organize the production, importation and distribution of boxes of food to the people of Venezuela through a government-controlled food and medicine distribution program, Comité Local de Abastecimiento y Producción ("CLAP").

The conspirators obtained the contract by offering, promising, and paying bribes to Venezuelan government officials, including Vielma-Mora, who was a Venezuelan official responsible for awarding and administering the food contract.

4. Vielma-Mora recruited the defendant into the conspiracy prior to the contract award. At Vielma-Mora's direction, the defendant designed a business proposal for the production of boxes of food that would be imported pursuant to the CLAP program. The defendant worked with Lizcano on the proposal for the production of the boxes of food. After the defendant presented his proposal, it was sent to a company owned and controlled by Co-Conspirator 1 and Pulido.

5. In or about mid-2016, the defendant, Vielma-Mora, Co-Conspirator 1, Carlos Rolando Lizcano Manrique ("Lizcano"), and others met to discuss and plan aspects of the scheme. During the meeting, members of the conspiracy discussed the proposal and other issues relating to the production of the boxes of food, including the actual costs to be incurred for each box. As part of the scheme, the co-conspirators inflated the costs associated with the production, importation and distribution of the boxes of food under the contract with the Venezuelan government over and above the actual costs incurred. The conspirators used the margin generated by the inflated costs to pay bribes to Venezuelan government officials, including Vielma-Mora, who assisted them in obtaining the contract to produce the food boxes and to make millions of dollars in profit for themselves.

6. In or around mid to late-2016, the defendant, Co-Conspirator 1, Lizcano, and Vielma-Mora met with public officials in the Venezuelan Ministry of Finance, including Venezuelan Government Official 1 and Venezuelan Government Official 2 in order to obtain the officials' support and approval for awarding the food contracts to companies controlled by Pulido and Co-Conspirator 1. At other points during the relevant time period, Venezuelan Government

Official 1 was also a high-ranking official at Fondo de Desarollo Nacional ("FONDEN") and Banco de Desarollo Económico y Social de Venezuela ("BANDES"), two state-owned and state-controlled government entities in Venezuela. In addition, in or about June 2018, Venezuelan Government Official 2 was appointed as a high-ranking official of Corporación Venezolana de Comercio Exterior ("CORPOVEX"). CORPOVEX was the state-owned and state-controlled entity in Venezuela that contracted with companies under the CLAP program to purchase and import food and medicine into Venezuela and was responsible for overseeing the execution of those contracts.

7. Later, in or around mid to late-2016, the defendant met again with Co-Conspirator 1 and Vielma-Mora concerning the CLAP program. During the meeting, the defendant, Co-Conspirator 1, and Vielma-Mora discussed how the defendant would serve as an intermediary to receive the bribe money owed to Vielma-Mora for his part in awarding the food contracts to companies controlled by, and for the benefit of, Pulido, Co-Conspirator 1 and the other conspirators. The defendant would then forward, pay, transfer, and direct the bribe payments to and for the benefit of, Vielma-Mora, as instructed.

8. The first contract was awarded to Co-Conspirator 1 and Pulido's company, Group Grand Limited, in or around October 2016. The contract called for the production, importation and distribution of 10 million boxes of food to be provided through the CLAP program. The contract was administered by Comercializadora de Bienes y Servicios del Tachira ("COBISERTA"), a state-owned and controlled company located in the Venezuelan State of Tachira. As Governor of the State of Tachira, Vielma-Mora oversaw COBISERTA and had influence over who won contracts from COBISERTA to provide food under the CLAP program.

9. Following the first contract, Co-Conspirator 1 and Pulido's companies, Group Grand Limited and Asasi Food FZE, were awarded additional contracts for the production, importation, and distribution of food and medicine to be provided through the CLAP program. These additional contracts were administered by CORPOVEX. The conspirators obtained the contracts under the CLAP program by offering, promising, and paying bribes to Venezuelan government officials, including Vielma-Mora, Venezuelan Government Official 1, and Venezuelan Government Official 2, who were responsible for awarding and administering the food and medicine contracts.

10. In exchange for awarding the contracts to companies controlled by Co-Conspirator 1 and Pulido, Vielma-Mora received at least $8.5 million in USD and assets in bribes. Certain bribe payments to Vielma-Mora were made via wire transfers to bank accounts associated with the defendant and his companies, as well as by using companies created to receive the monies with the help of another co-conspirator, Ana Guillermo Luis ("Guillermo"), who worked for Co-Conspirator 1 and Pulido.

11. Co-Conspirator 1, Pulido, and other conspirators used a complex network of numerous companies, controlled by members of the conspiracy, to export boxes of food from Mexico, import the boxes of food into Venezuela, distribute the boxes of food within Venezuela and receive the money sent by the Venezuelan government pursuant to the CLAP program contracts in various countries.

12. Guillermo assisted in the creation of companies and associated bank accounts that were used to receive funds from Venezuela pursuant to the CLAP program contracts in various countries. Guillermo also assisted in distributing funds to the conspirators.

13. The defendant had meetings and conversations with Guillermo concerning the transfer and movement of funds related to his and Vielma-Mora's payments in exchange for their participation in the conspiracy.

14. The Government of Venezuela sent money to companies controlled by Co-Conspirator 1 and Pulido, including Group Grand Limited and Asasi Food FZE, as payment under the CLAP program contracts for the production, importation and distribution of boxes of food in Venezuela. In furtherance of the scheme, the conspirators transferred money from those companies and others they controlled to members of the conspiracy and Venezuelan government officials.

15. Bank records detail that on or about December 12, 2016, co-conspirators caused a wire transfer of approximately $1,999,910.00 USD to be sent to a bank account outside the United States held in the name of a company controlled by the defendant. The payment was for the benefit of the defendant and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

16. On or about December 23, 2016, the defendant caused a wire transfer of approximately $1,599,965.00 USD from the bank account referenced in paragraph 15 to a bank account maintained by the defendant in the Southern District of Florida. A portion of these funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

17. Bank records detail that on or about January 26, 2017, co-conspirators caused a wire transfer of approximately $1,999,910.00 USD to be sent to the same bank account outside the United States held in the name of a company controlled by the defendant, as referenced in paragraph 15. The payment was for the benefit of the defendant and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

18. On or about February 11, 2017, while in the United States, the defendant caused a wire transfer of approximately $1,599,965.00 USD from the bank account referenced in paragraph 15 to a bank account maintained by the defendant in the Southern District of Florida. In connection with this wire transfer, the defendant, while in the United States, sent an email to a financial institution located in Panama, attaching documentation to support the financial transfer. A portion of these funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

19. Bank records detail that on or about June 14, 2017, co-conspirators caused a wire transfer of approximately $4,000,000 USD to be sent to another bank account outside the United States held in the name of a company controlled by the defendant. The payment was for the benefit of the defendant and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

20. On or about July 5, 2017, the defendant caused a wire transfer of approximately $2,525,000 USD from the bank account referenced in paragraph 19 to a bank account maintained by the defendant in the Southern District of Florida. A portion of these funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

21. Bank records detail that on or about July 17, 2017, co-conspirators caused a wire transfer of approximately $756,935 USD to be sent to the same bank account outside the United States held in the name of a company controlled by the defendant, as referenced in paragraph 19. The payment was for the benefit of the defendant and Vielma-Mora for their participation in, and to promote, the corrupt scheme.

22. On or about August 23, 2017, the defendant caused a wire transfer of approximately $630,228 USD from the bank account referenced in paragraph 19 to his bank account in the Southern District of Florida. A portion of these funds were transferred and used for the benefit of Vielma-Mora in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

23. On or about March 6, 2019, the defendant, while in the United States, authorized the transfer of funds at the direction of and for the benefit of Vielma-Mora from a bank account that the defendant controlled to individuals and entities that Vielma-Mora specified, all in furtherance of the bribery scheme.

24. On or about April 5, 2019, the defendant, while in the United States, authorized a credit card transaction using his American Express card in order to pay approximately $4,499 to Orbitz.com for a close relative of Vielma-Mora, at the direction of Vielma-Mora.

25. During the relevant period, the defendant agreed with his co-conspirators and others, to make bribe payments to Venezuelan public officials to obtain and retain contracts and other business advantages, including obtaining multi-million dollar contracts with the Venezuelan government, and departments, agencies, and instrumentalities owned and controlled by the Venezuelan government, including COBISERTA and CORPOVEX, for the production, importation and distribution of food to the people of Venezuela. Further, the defendant and his co-conspirators knew the corrupt transactions and the use of funds related thereto, including proceeds of the bribery scheme, were unlawful.

26. In total, the defendant, on behalf of himself and Vielma-Mora, received approximately $16,980,330 USD as part of the conspiracy. In order to transfer Vielma-Mora his portion of the proceeds, the defendant wire transferred monies to individuals or entities and

transferred assets at Vielma-Mora's direction that totaled approximately $11,033,142 in USD in value. The defendant retained approximately $5,947,188 USD for his participation in the conspiracy.

27. The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all the facts known to the defendant or the United States concerning criminal activity in which the defendant and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

MICHAEL DAVIS
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515

Date: 10/30/23

By: Sean T. McLaughlin
SEAN MCLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
U.S. Department of Justice, Criminal Division

Date: 10/30/23

By: [signature]
ALEXANDER KRAMER
TRIAL ATTORNEY

Date: 10/13/23

[signature]
SAMUEL J. RABIN, JR.
MARTY STEINBERG
ANDREA LÓPEZ
ATTORNEY FOR DEFENDANT

Date: 10/13/23

[signature]
ORLANDO ALFONSO CONTRERAS SAAB
DEFENDANT